The Police Jury of the Parish of Pointe Coupée *v.* Charles Gardiner and another, Syndics.

The act of the 28th Feb., 1831, authorizing the Police Jury of Pointe Coupée and certain other parishes, to cause the necessary work to be done to the roads, levees, bridges, &c., in those parishes, gave a summary remedy to the undertaker employed by the Police Jury, and extraordinary powers to the Parish Judge, to issue orders of seizure and sale for any amount in such cases. But where, from any informality in the proceedings, such summary process cannot be issued, the Police Jury may nevertheless recover, *via ordinaria*, from the proprietor of the estate, at least so far as such work has been advantageous to him, the cost of works which both his interest and the general safety required to be executed. But such recovery cannot be had under proceedings before the Parish Judge, commencing with an order of seizure and sale under the act of 1831, by changing the executory into ordinary process, the Parish Judge having no jurisdiction of the question presented in an action, *via ordinaria*.

Section 4, of art. 3216 of the Civil Code, gives a privilege on the land for improvements to the levees, bridges, roads, &c., not only to one who has made such improvements by contract or job, but to any one who has applied his own labor to that purpose under the authority of the police regulations ; and where work has been done, which the regulations of police require the owner himself to perform, and by which the land has been rendered more valuable, the land itself will be affected by the privilege, which, if recorded in the proper office, will pass with it into the hands of third persons. Where the work has been regularly adjudicated and done by the job, the amount for which a privilege exists, is liquidated ; otherwise, it must depend on the proof of its utility to the proprietor ; and in an action on a *quantum meruit* evidence will be admissible to show the increased value of the land.

Any attempt to amend a bill of exceptions, after judgment signed, is wholly irregular.

The plaintiffs are appellants from a judgment of the District

Court of the First District. They allege in their petition that Se-
bastian Hiriart was the owner of a tract of land in the parish of
Pointe Coupée ; that he had for a long period neglected to repair
and keep in proper order a levee and public road on the said land,
as he was bound by law to do ; that his neglect had exposed many
contiguous plantations to the danger of inundation ; that the In-
spector of Roads and Levees for the district in which the land is
situated, had advertised the work necessary to be done on the land
for sale, giving due notice thereof to Hiriart ; that the work was
adjudicated, on the 1st of December, 1831, to Charles Morgan,
the lowest bidder, for the sum of $6000 ; that Morgan had com-
pleted the work according to the terms of the adjudication, it hav-
ing been approved and received by the Inspector ; that the plain-
tiffs paid Morgan the $6000 ; and that the *procès-verbal* of the
adjudication was duly recorded by the Recorder of Mortgages of
the parish of Pointe Coupée, on the 6th December, 1831, where-
by they acquired a privilege on the land for the amount thus paid,
with interest. The plaintiffs further allege, that on the 30th Sep-
tember, 1834, Hiriart sold the land to Adelaide Bourgeat, the wife,
separated in property, of James Fort Muse, by notarial act, in
which the privilege was recited ; that in 1837 she and her husband
sold it to one William Smith ; and that Smith, having applied for
the benefit of the insolvent laws, surrendered it to his creditors, of
whom the defendants are the syndics. The plaintiffs aver that
more than thirty days previous to the institution of suit, they de-
manded payment of the sum of $6000, with five per cent interest
from the 1st December, 1831, of Hiriart, and that he refused to
pay the same. They allege that the syndics of Smith are bound to
sell the land, and that plaintiffs are entitled to have their claim, with
interest, paid out of the proceeds ; and that the syndics, though
amicably requested to so do, refuse to acknowledge their right to
to be paid thereout. They further aver, that they are entitled to
be paid as before claimed, though it should be proved that the ad-
judication of the work to Morgan was irregularly made in conse-
quence of the omission of certain formalities prescribed by law,
because the land has been benefited thereby, and would have
been worthless and unsaleable had such work not been done. The
petition concludes with a prayer, that the defendants may be order-

ed to sell the land at a short credit; and to file an account immediately afterwards, placing the petitioners thereon as privileged creditors of the first rank; and that they be decreed to pay the amount claimed, with interest and costs.

An exception of *res judicata*, sustained by *Buchanan*, J., having been overruled by the Supreme Court, 14 La. 68, and the case remanded for further proceedings, the defendants answered, admitting that they were the syndics of Smith, that the land had been conveyed as alleged in the petition, but denying that any lien or privilege existed thereon in favor of the plaintiffs, or that the latter had any claim whatever against the estate of the insolvent. They further averred that Marguerite Adelaide the wife of James Fort Muse, was the vendor of their ~~involvent~~ that she was separated in property from her husband, and prayed that she and husband might be cited in warranty, and for judgment over, &c.

Marguerite A. Muse answered denying that she was ever liable either to the Police Jury or to the syndics of Smith. She averred that if any work had been executed by Morgan, the sum claimed for it was exorbitant; and concluded with a prayer that Sebastian Heriart, her vendor, might be cited in warranty, &c. Heriart denied generally all the allegations in the petition, and answer; averred that if he should be found to owe any thing, it could only be the amount which he had profited by the work; that the amount claimed was exorbitant; and that the plaintiffs had lost all claim against him by their neglect to give him notice of the repairs necessary to the levees, &c.

Evidence was introduced to establish the adjudication to Morgan, the inscription of the *procès-verbal* among the records of mortgages in the office of the Parish Judge of Point Coupée, Morgan's execution of the work, the sale from Hiriart to M. A. Muse, and from her to the insolvent, Smith. Transcripts of the records in the suit brought by Morgan against Hiriart, praying for an order of seizure and sale of the land, and in the suit by the same plaintiff against the Police Jury of Point Coupée, were introduced. Proof was offered of the payment to Morgan by the plaintiffs of the contract price, as alleged in the petition.

The plaintiffs having offered in evidence the testimony of certain witnesses, taken under a commission, for the purpose of es-

tablishing the value of the work done on the land, the counsel for
the defendants and the party cited in warranty, objected to its in-
troduction, on the grounds : 1, that it tended to prove the value of
work done on the land, and that such evidence was inadmissi-
ble against third persons, who could only be made responsible for
the value of the work, in case a lien attached to the land, which
the Supreme Court had, in the case of *Morgan* v. *The Police
Jury of Pointe Coupée*, decided not to exist : 2, that part of the
testimony tended to show the manner in which the adjudication of
the work had been made to Morgan, the contract between him and
the plaintiffs being, as to the defendants, *res enter alios &c.* This
testimony was rejected, and the plaintiffs excepted. There was
judgment in favor of the defendants. After judgment had been
signed, the counsel of M. A. Muse was allowed, on a rule against
the plaintiffs, to amend the bill of exceptions which had been
taken in the course of the trial.

*Janin*, for the plaintiffs. The inferior court having rejected the
testimony offered under the commission, which constituted nearly
the whole evidence on behalf of the plaintiffs, should have rendered
a judgment as in case of nonsuit, and not one for the defend-
ants. The exception to the rejection of this testimony, is the only
matter now before the court ; and presents the same question that
was raised on the former appeal, and which has consequently been
finally settled by a judgment of the court. That judgment is the
property of the plaintiffs. The judgment of the lower court, to
which the exception now before the court was taken, declares in
substance, that this being a hypothecary action, *via ordinaria*, to
enforce against a third possessor a mortgage attaching to the pro-
perty before he purchased, and it appearing from a decision of
the Supreme Court that the lien was lost, or rather never attached,
the plaintiffs are without any right of action against the third pos-
sessor, and cannot be permitted to offer evidence in support of the
lien. This is precisely the objection raised on the former trial
sustained by the lower court, and reversed on appeal, 14 La. 68.
As no action could be sustained against a third possessor unless a
privilege existed on the land, by declaring that the action might be
maintained, the Supreme Court declared, by implication, the lien to
be valid, though capable of being enforced only, *via ordinaria*, on a

*quantum meruit.* The legal grounds on which the privilege rests, are stated at length in the argument on the former trial, 14 La. 70. Independently of the act of 1831, the general law of the land compels riparian proprietors to make levees on their lands. The act of 1810, Bullard & Curry's Digest, 640, imposes on the Police Jury the duty of superintending the making and repairing of levees.

The only remaining question is, as to the preservation of the privilege. It was created by the *nature* of the work. Every act that gives notice of the work, and is recorded, preserves the privilege. Whether the land be affected in the hands of third persons depends on their knowledge of the claim, and whether it be derived from the record, or from other circumstances, is immaterial. Civ. Code, arts. 3314, 3315. If the adjudication was not made in compliance with the forms of law, it loses its effect as *conclusive* evidence of the *amount* of the claim, and, like an informal act of mortgage, gives no right to executory process; but the privilege itself could be destroyed only by want of knowledge, actual or constructive, on the part of the purchaser.

*R. N. Ogden,* for the appellees. The principles on which the sight of action rests in the present case, were settled in the case of the *Police Jury* v. *Hampton,* 5 Mart. N. S. 389, in which it was held that the claim was personal against the owner.

BULLARD, J. Morgan having made a new levee on the front of a tract of land belonging to S. Hiriart, under an adjudication by authority of the Police Jury of Pointe Coupée, obtained an order of seizure and sale from the Parish Judge, in pursuance of the act of the legislature of 1831. That order was opposed, on the ground of irregularity in the proceedings by which the work was adjudicated. The opposition was successful both in the District and the Supreme Court. See 5 La. 43.

Failing in his proceeding *in rem,* Morgan brought his action against the Police Jury, through the fault of whose agent he had not been able to enforce his lien upon the land. In that action he succeeded in recovering the amount of the price at which the work had been adjudicated. 11 La. 157.

The tract of land which had been benefited by the work thus done, was sold by the then owner to Marguerite-A. Muse, and in the act of sale it is recited, that according to the records of mort-

gages, no other exists upon the land except the inscription made on the 6th of December, 1831, of the *procès-verbal* of an adjudication to Charles Morgan of work to be done on the land for $6000, against the effect of which inscription the vendor agrees to warrant. The land was afterwards sold to Smith, whose syndics are the defendants in this case. The present action is brought by the Police Jury against the syndics of Smith, to cause them to sell the tract of land, that the plaintiffs may be reimbursed out of the proceeds of the sale, they alleging that they have, by law, a privilege on the land for the value of the improvement.

M. A. Muse was cited in warranty by the syndics, and she, in her turn, has cited in warranty Hiriart, her vendor. The parties are, therefore, all before us ; and the pleadings present the question, whether the Police Jury, under all the circumstances of the case, and according to the provisions of the Code, are entitled to be reimbursed, so far as the levee has added to the value of the land. Hiriart, in his answer, denies being bound at all. He says that M. A. Muse has no right to call him in warranty, because at the time of the sale she knew of the situation of the parties, and the alleged claim upon the plantation. He avers, that if he should owe any thing, which he denies, he owes only the amount which he has profited, and not the extravagant and enormous sum alleged to have been paid by the Police Jury. He further says that the Police Jury have lost all their claim on him, by their own carelessness and neglect in not giving notice of the repairs rendered necessary.

In the case of the *Police Jury of New Orleans* v. *Hampton*, this court held, that although no action could be maintained against the owner for a breach of police regulations, without strict legal notice, yet the jury may recover the value of the repairs put on his property, if they were useful and necessary. The court proceeded upon the great principle of equity, that no man should be permitted to enrich himself at another's expense. Although this decision was given before the passage of the act of 1831, in virtue of which the adjudication in this case was recorded, the principle remains unaltered. That act gave a summary remedy to the undertaker employed by the parish, and extraordinary power to the Parish Judge to issue an order of seizure and sale for any amount

in such cases. But whenever, by reason of informalities in the notices or other proceedings, the summary process cannot be issued, no good reason suggests itself to our minds why the Police Jury, considered in the light of a *negotiorum gestor*, making repairs to a levee which not only the interest of the proprietor but the general safety required, should not be reimbursed, so far at least as the work had been advantageous to the owner of the land. The question could not be presented in that aspect in a proceeding commencing with an order of seizure and sale, by changing the executory into the *via ordinaria*, because the Parish Judge has no jurisdiction of such a question. His power is confined to the issuing of the process *in rem*, when all the forms of law have been previously complied with. But a privilege upon land for improvements made to levees, bridges, &c., exists independently of the act of 1831. It is recognized by article 3216, No. 4, of the Code, in these words : " Those who have worked by the job, or by employing their slaves in the manner directed by the law, or by the regulations of the police, in making or repairing the levees, bridges, ditches, and roads of a proprietor, on the land, the levees, bridges, and roads which have been made or repaired." The privilege is given, not only to one who by contract or job has repaired levees or bridges, but to any one who has applied his own labor to that purpose, when authorized by the police regulations. We are by no means disposed to give a narrow construction to this article. The general principles of equity, the best interests of agriculture, and considerations connected with the public safety, alike require, in our opinion, a liberal construction. Wherever, under circumstances contemplated by the police of the parishes bordering upon the Mississippi, an individual or the parish has done any work contemplated by the article above recited, by which the land on which the improved levee, road, or bridge exists, has been rendered more valuable—work which the regulations of the police required should be done by the owner himself, that owner is bound *ex æquo et bono* to make a proper remuneration ; and the land itself is affected by a privilege, and if recorded in the proper office, it passes with the land into the hands of third persons. If the work has been done by job, the sum is liquidated ; if otherwise, as contemplated in the second clause of the article, the

amount is necessarily not ascertained by any previous agreement, and will depend upon the proof of its utility to the proprietor.

We find nothing in any previous decisions of the court relative to this case, which militates against the views now expressed of the rights of the parties. On the contrary, the court remarked, in overruling the plea *rei judicatæ,* that such an action appeared to have been expressly reserved. 14 La. 72.

Having thus expressed our views as to the principles which ought to govern in this case upon the merits, we can better understand the force of a bill of exceptions, upon which it is now before us; for it appears that on the case being remanded, a new trial took place, during which certain evidence was rejected, and that a judgment was rendered for the defendant, as in case of nonsuit, from which this appeal is prosecuted.

The bill of exceptions shows that certain depositions of witnesses were rejected on the opposition of the warrantors, on the grounds : *first,* that the evidence tended to prove the value of the of the work done on the levee, and that such evidence could not be received against third persons, because such third persons could be made indirectly responsible for the value of said work only if a lien attached to the land, and *that lien was lost in this case* according to the decisions of the Supreme Court in the case of *Morgan* against *The Police Jury ;* and *second,* that a part of the evidence tended to show the manner in which the adjudication was made to Morgan, and that that contract was, as to the defendants, *res inter alios acta.*

We do not think it our duty to notice the attempt made by rule to amend this bill of exceptions, further than to say, that such a proceeding is wholly irregular after judgment signed, and that in our opinion all the objections made to the admission of the depositions are sufficiently before us, whether embodied in the bill, or in the written objections annexed to the interrogatories.

It will have been perceived already what our opinion is upon this bill of exceptions. We think the court erred in rejecting.the evidence to show the value of the work, and that it was done under the authority of the Police Jury. This matter is certainly not decided, as is stated in the bill of exceptions, in any of the cases which have come before this court. If the evidence were offered.

to show that the adjudication was conformable to the act of 1831, when on the face of it the contrary is shown, it would be inadmissible. But being of opinion that the land is bound for what has been added to its value by work done under the authority of the Police Jury, we think that, in an action upon a *quantum meruit*, the evidence to show the increased value of the land ought to have been admitted.

The legal obligation of riparian proprietors to construct levees cannot be questioned. The authority of the Police Juries of the different parishes to regulate the police of levees is equally clear, and although the contract made by the parochial authorities may be so defective in form as not to authorize a summary proceeding to be ordered by the parish judge, yet we have already said that the useful work done by such authority creates a privilege on the land, according to our construction of article 3216 of the Code. The last inquiry is, what is the amount which the plaintiffs are entitled to demand? It is not necessarily the price at which the work was adjudicated in an informal manner. The value is estimated variously by witnesses, from $6000 to $2000. According to the evidence, the land was rendered more valuable by at least the latter sum. *In dubiis, id quod minimum est sequimur.*

The judgment of the District Court is therefore reversed, and proceeding to render such judgment as should have been given below, it is further ordered that the defendants, the syndics of Smith's creditors, pay to the plaintiffs two thousand dollars out of the price of the tract of land; that the syndics recover over against M. A. Muse the same sum; and that she also recover over against Sebastian Hiriart, her warrantor, the said sum of $2000, with interest at five per cent from judicial demand, and the costs in both courts.